1          UNITED STATES DISTRICT COURT

2      WESTERN DISTRICT OF WASHINGTON AT SEATTLE

3   _____

4   United States of America,

5                   Plaintiff,          NO. CR10-199RSM

6   v.                                  SENTENCING HEARING

7   Marlon Joe Tramble,                 SEATTLE, WASHINGTON
                                        March 4, 2011
8                   Defendant.

9   _____

10          VERBATIM REPORT OF PROCEEDINGS
         BEFORE THE HONORABLE RICARDO S. MARTINEZ
11             UNITED STATES DISTRICT JUDGE
    _____

12

13

14  APPEARANCES:

15  For the Plaintiff:        Ye-Ting Woo

16

17  For the Defendant:        Jennifer Wellman
                              Dennis Carroll
18

19  For U.S. Probation:       Todd Sanders

20

21  Reported by:              Denae Hovland, RPR, RMR, CRR
                              Federal Court Reporter
22                            206.370.8508
                              denae_hovland@wawd.uscourts.gov
23

24  Proceedings recorded by mechanical stenography, transcript
    produced by Reporter on computer.
25

1    THE CLERK:  This is the sentencing hearing in United

2   States vs. Marlon Joe Tramble, Cause Number CR10-199 assigned to

3   this court.  Will counsel please rise and make their appearances?

4    MS. WOO:  Good afternoon, Your Honor, Ye-Ting Woo for

5   the United States.

6    MS. WELLMAN:  Good afternoon, Your Honor, Jennifer

7   Wellman and Dennis Carroll on behalf of Mr. Tramble, who is with

8   us at counsel table.

9    THE COURT:  Counsel, thank you.  Counsel, let me

10  indicate for you and for the record exactly what the court has

11  received and had a full opportunity to review prior to our

12  sentencing hearing this afternoon.

13    The court has reviewed the plea agreement of the parties,

14  the government's sentencing memo, the attachments to the

15  government's sentencing memo, the defendant's sentencing memo

16  with all of the attachments, exhibits, the defense supplemental

17  sentencing memorandum.

18    The court received a letter from the defendant's mother with

19  some attachments, as well, and, of course, the presentence report

20  prepared in this case by U.S. Probation Officer Diane McLuen.

21  Present in court representing probation is Supervising Probation

22  Officer Todd Sanders.

23    Trusting the parties have received the same materials and

24  having had a full opportunity to review all of those materials,

25  if I could have the government indicate their recommendation for

1    sentence.

2          MS. WOO:  Good morning, Your Honor.  I'd like to at

3    least begin by forgiving my hoarse voice.  I've had a very bad

4    cold this week, so hopefully I won't start coughing too much.

5          THE COURT:  That's fine.

6          MS. WOO:  Your Honor, this case has been, I think, a

7    difficult one for the government on many levels, one of which is

8    the victim.  Certainly, we consider her to be quite scarred, not

9    only by this incident, but by underlying tragedies in her life,

10   as well as difficult because we recognize that the defendant is

11   still a young man.  Although he's had a difficult childhood, he's

12   also done -- he's also committed a very serious crime, and he's

13   had a long, long criminal history.

14       And so in balancing what is appropriate, that's a challenge

15   to the government, as much as it is a challenge to the court.

16   And here we are faced with where is the right amount of time.

17   Ninety-six?  120?  144?

18       As you know, the government is asking for 144, and there are

19   some factors that tip us towards the high end, which I do think

20   distinguishes this case from some of the other cases that I have

21   worked on, that counsel has presented in their sentencing

22   memorandum materials, and there are just some images that have

23   struck me that have caused me to really, again, move towards the

24   higher end and ask for 12 years.

25       The image of the defendant lifting up this 18-year-old girl

1   by the neck off the ground so that she cannot breathe, that's far

2   more serious than slapping, hitting or pushing.  And I'm not

3   saying, of course, slapping, pushing and hitting is justifiable.

4   It's not.  But when you go and you cross the line and you get to

5   a point where a couple more seconds could have caused her to lose

6   oxygen.  This happened when she was seven months pregnant.  It

7   happened on multiple occasions.  It's corroborated by a police

8   report.  And even more meaningful, it's corroborated by his tone

9   of voice with her and the threats that he made to this young

10   woman when the police were trying to find him.  That is what tips

11   it from 96 to 144 months.

12      So those are the distinctions that we have made here in

13   considering the facts of the case.

14      I know that that's one issue with the amount of time that

15   this young man deserves.  I do think it's very important to keep

16   our community safe, because he has become a predator, whether he

17   intended to or not.  Whether it was the circumstances of his

18   childhood, he has become a predator.  And if he had been caught

19   earlier on, maybe we could have stopped it, maybe we could have

20   changed it.  But at this point to some degree, we have a

21   responsibility to protect our community, to protect those girls

22   who are on the verge of making the wrong decision.  And when he

23   met the victim in this case, she was on the verge of making that

24   wrong decision, and he was responsible for leading her down that

25   path.

1    And I can tell you from working with many victims similar to

2    the victim in this case, that when you are led down that wrong

3    path and you have a person that you look up to, which she did,

4    she looked up to this man.  She wanted him to love her.  She

5    wanted him to take care of her.  He promised her things that she

6    thought no other person had ever promised her or could do for

7    her.  And he took advantage of that.  And he has that ability to

8    take advantage of that in other young women as well.  But once

9    she was led down that road, that became the life that she knew.

10    And, yes, she may have relapsed on prior occasions, but in

11    the psychology of these young women who are led down this road,

12    it's quite common for them to relapse.  It's like putting a

13    bottle of alcohol in front of a person who has a higher

14    propensity to drink and have them start drinking.  They are going

15    to relapse.  It doesn't mean they are a bad person.  It means

16    that they are struggling.

17    But what this defendant did was he put that bottle in front

18    of her, and he knew that she would take it, and he knew that if

19    he kept putting it in front of her, she was going to keep

20    drinking.  That's an analogy that has been meaningful to me in

21    trying to understand the dynamic in these relationships between

22    young men and young women and the men who exploit the women.

23    I also want to address the supervised release conditions

24    that we're asking.  Certainly, the court is not required to

25    impose any sexual deviancy treatment program or some of the other

1   conditions that I have asked for, but I do think that there is a

2   need here because of this defendant's background, and certainly

3   due to no fault of his own.  If he has been sexually abused as a

4   child and he's exhibiting behavior in which he acts out as a

5   result of that abuse, that actually makes him -- gives a higher

6   likelihood that he does have sexually deviant behavior.  All I'm

7   asking for is this court to have treatment imposed, or at least

8   at a minimum, actually, an evaluation, an evaluation which does

9   not hurt him and, in fact, can improve his life.

10  If the evaluation determines he's not a sexual deviant, he's

11  not required to go through the program.  If the evaluation

12  determines he is, then all the better for him.  We are hoping

13  that, of course, throughout all of this, ultimately his life will

14  improve.

15  His first sexually motivated contact was when he was 12

16  years old.  I think this is very different from the other

17  defendant who the defense has pointed out is a similar candidate,

18  which was Toda Robinson, and Mr. Robinson did not have that

19  history.

20  Mr. Tramble has had repeated sexual misconduct, as well as

21  assault conduct with women and teenage girls and people in

22  authority, including his most recent, even though it's not an

23  assault, but his refusing to obey orders at the FDC.  So I think

24  that there are some programs that can be put into place to assist

25  him if there is a chance at this point at 26 years of life that

1    he can turn the corner and not hurt other people.

2        I also think that there is a basis, as a result of his

3    history, to restrict his contact with minors, and certainly

4    that's at the discretion of the probation office when he's on

5    supervised release.  If he's been through any sort of mental

6    health treatment or sexual deviancy treatment and, you know, in

7    the end if it's determined that it's not necessary, it certainly

8    is up to the discretion of the probation office at the time to

9    seek to remove that condition or determine that it's not

10   necessary.

11       But I think for now, based on what we know, that ensuring

12   that he does not have access to minors, ensuring that he is not

13   around minors, that he is out of -- stays out of areas where

14   there may be high prostitution areas, that we have a

15   responsibility to protect the citizens in our country from people

16   who at least to this point have demonstrated that they can and

17   will prey on others for their own benefit.

18       There is also an agreement by the parties for the defendant

19   to pay the amount of restitution, and we will include that in the

20   judgment.  And just for the court's information, when I have

21   handled this type of situation in the past, I will not put the

22   identity of the victim's name, but indicate in the judgment that

23   any funds paid should be sent to the clerk's office, and then I

24   will provide the clerk's office with the name and address of the

25   victim to maintain confidentiality for the victim.

1    And lastly, I'd ask the court to -- for the record, to

2  ensure that we have a complete record, to advise the defendant

3  that he has waived his right to appeal, assuming that the court

4  imposes a sentence within the agreed range.

5    Does the court have any questions for me?

6    THE COURT:  Yes, I have one.  One of the special

7  conditions of supervised release that you request is that he have

8  no direct or indirect contact with the individual known as female

9  victim one, juvenile female one.  How do you handle that in the

10  judgment form in terms of naming them?

11    MS. WOO:  Well, we generally will indicate female

12  victim one and juvenile.  We don't put their names in there.

13  Sometimes we will say not to contact any victims or witnesses in

14  the case.  And, certainly, if the court prefers, I can clarify

15  that in writing with counsel, but in our discovery production

16  with them, they have received statements of both of those

17  victims, are well aware of their names.

18    THE COURT:  Thank you.

19    MS. WOO:  You're welcome.

20    THE COURT:  Ms. Wellman?

21    MS. WELLMAN:  Thank you, Your Honor.  Your Honor, first

22  let me begin by making sure Your Honor knows who is in the

23  courtroom on behalf of Mr. Tramble.  Gail Gausby is in the blue

24  shirt directly behind me.  She is Mr. Tramble's mom.  Also with

25  her are his sisters, Dayen and Naria.  They all flew in from out

1    of town to be here today and show their support, in addition to
2    her letter to you, Your Honor, and let Mr. Tramble know that they
3    are standing by him whenever his sentence ends, whatever Your
4    Honor imposes.

5        I was going to start differently, but I think given
6    Ms. Woo's remarks with respect to supervision terms, this isn't a
7    sexual deviancy case.  This isn't a case involving juveniles.  I
8    think it would be irresponsible for Your Honor to condone putting
9    those kind of conditions on -- in this kind of case given the law
10   and the constitution.

11       She distinguished it from Mr. Robinson's case, so I
12   apologize for taking the time to do this, but I am going to do
13   it.  I am going to read, from the government's memo, their
14   description of Mr. Robinson's background.  This is Robinson's
15   seventh felony criminal conviction.  His criminal history began
16   when he was just 15 years old.  Since that time, he has been
17   arrested approximately 80 times and has amassed numerous criminal
18   convictions, including acts of violence.

19       In February of 1993, at the age of 17, following a verbal
20   altercation, Robinson fired three shots at the victim.

21       At the age of 19, Robinson assaulted two officers who were
22   attempting to arrest him.  During this incident, he broke one
23   officer's nose and punched another officer in the face, causing a
24   sore jaw.

25       Two years later, at the age of 21, he was convicted of

assault in the fourth degree for punching his girlfriend in her face and body.

In June 1998, Robinson confronted an ex-girlfriend at her place of employment. He grabbed her and shoved her against the wall. Four days later, he pulled up alongside of the victim and tried to run her off the road. When that failed, he pulled his car in front of the victim's, put the car in reverse, and hit the victim's car.

In April 2009, Robinson assaulted a female, presumably a former girlfriend, by pulling his car in front of her car, abruptly stopping, and backing up into her car at least three times. Also present in the victim's car were three children.

Robinson has numerous convictions for driving without a valid license or when his license has been suspended. Additionally, there are convictions for obstruction.

His criminal convictions show a pattern of violence, particularly against women, and a complete disdain for the law.

In this case, though it did not involve violence, he took advantage of juvenile females by, at a minimum, facilitating their prostitution activities and financially benefiting from it. He is entrenched in the criminal life-style. He's a danger. This is signed by Bruce Miyake of the U.S. government's office.

So to suggest here today that Mr. Tramble is far worse and deserving as if he, like Mr. Robinson, was involved in the prostitution of four, not just one or two or three, but four

juvenile victims I think is disappointing and should not be
condoned.

With all due respect to the government, I think Dr. Barrett
is in the best position to determine the kind of treatment that
is necessary to address the devastating effects of Mr. Tramble's
upbringing.  We did not have her report before he entered his
guilty plea or prior to his rejection of the government's offer
when he was still in state custody.  It was clear to us there
were some mental health issues.  We didn't have a good
understanding of the extent or the severity, how it played on his
ability to problem solve, or how it played a pivotal role in his
choices to engage in this serious offense.

Certainly, her evaluation explains a great deal about why we
are here today, how we got here, some of the difficulties that we
have encountered.  But clearly, he is not the monster that the
government would like Your Honor to find him to be.  He is a
damaged, mentally ill young man.  He's paranoid.  He's got the
maturity of a 14-year-old.  He was raised in a troubled
environment, and sexually abused, that essentially led him to a
life on the street by his own father.

So these life circumstances are not only sad, but they do
explain why we are here.  And most importantly, they explain how
we can ensure through the justice system or do the best possible
means of ensuring that this doesn't happen again.  We can build
on Mr. Tramble's desire to not lead this kind of life with the

1    support of federal supervision.

2          The offense is serious.  We do not dispute that.  We never

3    have.  We never will.  She's the victim.  It's a serious case.

4    We don't condone what happened here.  But there are certainly

5    some very large disagreements about the facts of the case, and

6    unless the court wants me to address the specifics, I think it

7    suffices to say that the facts in the plea agreement are enough.

8    They are serious enough for Your Honor to render an opinion.

9          We dispute much of what the government says that the victim

10   has alleged and what has happened, and I think there are good

11   reasons to doubt the accuracy of the depiction painted by the

12   government this afternoon and in her briefing.

13         I also think there is good reason to believe that the victim

14   is more sophisticated than the government would like Your Honor

15   to believe, and I respectfully disagree that the analogy to a

16   relapse is appropriate here.

17         We do have a victim that was admittedly engaged in this

18   before she approached Mr. Tramble in downtown Seattle, and we

19   also have a victim who had the gumption to lie, by omission or

20   otherwise, to not only the federal prosecutor, but the federal

21   officers, the state officers and the grand jury.  So to suggest

22   that she's this vulnerable, innocent, naive person is simply

23   unfair.

24         But at the end of the day, why are we fighting about this?

25   We agree it's serious.  That's why Mr. Tramble pled guilty.

1   That's why it's in federal court.  The first measure of

2   seriousness are the guidelines.  And the guidelines in this case

3   say no more than 30 months captures the nature and seriousness of

4   the offense conduct.

5      Now, these other cases that we cited, when I reviewed them,

6   the government typically, if not in all of those cases, made the

7   same kind of recommendation they are making here for a high end.

8   But unlike those cases, we did not in this case pick a guideline

9   range that was consistent with the range that would otherwise be

10   applicable.  In other words, some of the cases had -- you know,

11   the defense thought the guideline range was 70 to 87 months.  The

12   government thought it was higher than that, so they reached a

13   middle ground and said, okay, this is justice for both parties.

14   Or the client had an exposure to 180 to 235 months, I think we

15   reflected in our defense sentencing memorandum.

16      We don't have that here.  We don't have this great high

17   guideline that we're now asking to come down to and that would

18   somehow suggest a high-end recommendation was warranted.  We

19   picked a guideline range far in excess -- or, I'm sorry, not a

20   guideline range -- a range in great excess of the 30 months

21   that's at the high end of the guidelines.

22      So why is 12 years even a credible option?  Why is it

23   considered when that agreement has nothing to do with any of the

24   facts about Mr. Tramble's life or any of the departures or

25   variances reflected in the guidelines themselves?  Why is 12 even

considered when Your Honor has the duty to impose the minimum

term necessary to penalize Mr. Tramble and achieve all other

legitimate goals of sentencing?  Why is anything more than eight

years justified when all of these other cases that we can again

go back and forth about whether it's serious or not serious and

equal to Mr. Tramble?

Even if Your Honor considers them equal in seriousness to

Mr. Tramble, they all received less than the low end of the

guideline range -- or, sorry, less than the low end of the range

we have agreed upon.  That is telling to us, to the probation

department, I believe, that eight years is enough.

And why is anything more than eight years necessary when we

have someone like Mr. Tramble with his background that indicates

he is not an incorrigible recidivist?  I think we cannot be so

appalled by the offense, that we lose sight of the offender.  And

I know and respect that Your Honor knows that.

And we know from Dr. Barrett that Mr.  -- you know, what

gave rise to his choice to act.  We know the debilitating effects

of even one of the things that happened to Mr. Tramble can have

on the rest of a person's life.  They were compounded by his

father.  But Mr. Tramble sees that.  And that's the important

part.  Mr. Tramble sees that.

Through working with Dr. Barrett, he's able to reflect on

his life.  He's able to reconsider the choices that he's made,

and he articulated to Dr. Barrett -- not reverse.  Dr. Barrett

1    didn't tell him what he should do.  He told her, looking back, I

2    realize I should be with mom.  And that's what he wants to do.

3    And his mom is here, as are his sisters.  His mom is a respected,

4    thoughtful, hard-working woman.  It's a mature, thoughtful

5    decision by Mr. Tramble.

6        There is evidence of his efforts to reflect on these choices

7    throughout Dr. Barrett's report, and Dr. Barrett has identified

8    how we can address his treatment needs once he's on supervision.

9    In other words, we can target the why and we can build upon

10   Mr. Tramble's achievements to date, in other words, taking that

11   huge step of looking back at our life and figuring out, what can

12   I do better, and do I really want to change.  I think that's good

13   for Mr. Tramble and that's good for the community.

14       He's also sought treatment in the FDC already on his own.

15   As Your Honor knows, they don't have a lot of resources at the

16   FDC.  We did learn through Ms. McLuen that we can try to get a

17   GED or get that started.  That, too, is something he wanted to

18   do, and pursue his education, all in an effort to improve

19   himself.  And that also is good for our community.

20       He wants to take advantage of the services that the FCIs or

21   the medical facility, wherever he is sent, offer.  He wants to

22   take advantage of all of the services on federal supervision.

23       So there is hope.  He has learned his lesson.  He doesn't

24   want to live his life -- he doesn't want to treat women this way.

25   And he's very sorry.

Under all these circumstances, there is simply no reason to believe 96 months is not enough. So we'd ask Your Honor to impose 96 months.

Unless Your Honor has questions for me, I know Mr. Tramble has a request with respect to placement. If he's not placed in a medical facility as outlined by Dr. Barrett, he'd like to go to FCI Phoenix. What's interesting is that his choice in that is because it does have vocational training. So he's taken the initiative to educate himself at the FDC regarding the facilities. And in keeping with his goals and hopes for the future, he understands there is furniture making and culinary arts offered at that program. And I would think whether he is in Phoenix or Sheridan near Washington, it would be the same amount of travel for his family, so it would be in keeping with the idea that he get placed where his family can visit as well.

THE COURT: Thank you, Ms. Wellman.

MS. WELLMAN: Thank you, Your Honor.

THE CLERK: Mr. Tramble, I have read the letter you submitted to the court. I have read all of the letters submitted also on your behalf. You have the right to make a statement prior to the court imposing sentence. This would be your opportunity.

THE DEFENDANT: I would like to apologize to the court for ever getting involved in a situation this severe. I never want to be a part of anything like this ever again. I was taking

1    steps toward changing my life, like accepting God into my life,

2    and things like that. I'm just really ashamed about this whole

3    ordeal. I'm ready to change. This is not the person I want to

4    be. I don't want to be involved in anything like this ever

5    again.

6    THE COURT: Thank you. Counsel, let me check with

7    probation. Mr. Sanders, thank you very much for covering for Ms.

8    McLuen. Obviously, you're quite aware of the presentence report

9    prepared by her and also the background of this case. Let me

10   point out, there is one typo on page three, paragraph three,

11   towards the bottom of the paragraph. It says the parties agree

12   that defense will advocate for a term of imprisonment of not less

13   than 96; the government will advocate for a term of imprisonment

14   of not less than 144. Actually, the plea agreement reads not

15   more than 144. So, just to correct that. Other than that, Mr.

16   Sanders, anything else you would like to say?

17   MR. SANDERS: Your Honor, I just think in this case, I

18   don't think there is any dispute about the seriousness of the

19   offense. There is no dispute about the need to provide

20   deterrence in this case. But as pointed out in the

21   recommendation, Mr. Tramble, for whatever reason -- maybe if we

22   would have caught up with him sooner, maybe this wouldn't have

23   happened. But the fact of the matter is, he has a horrific

24   record, and nothing has really ever happened to him.

25   This is a big wake-up call. Even if he goes away for eight

1    years, it's a long time.  He will be in his mid-thirties when he

2    gets out.  Hopefully, when he gets out, we'll be able to give him

3    some of the help that he needs that hopefully he can move on with

4    his life.  But I wish we would have been able to catch him

5    earlier before this happened.

6            THE COURT:  Thank you.

7            MS. WOO:  Your Honor, if I may make two quick comments.

8    One is about the sentencing guidelines.  I guess I'm a little

9    surprised for the defense to make a big deal about it because of

10   the fact that there was a lot of negotiation back and forth about

11   how to resolve this in a way that allowed the government to ask

12   for what we considered to be a significant amount of time, but

13   also mostly so that the defendant did not face the mandatory

14   minimum.  In other cases, we've been able to work out other

15   crimes that have allowed for that discretion of both parties, and

16   that was the purpose here.  So I guess I'm a little surprised

17   they would bring that out in a way of saying, hey, his guideline

18   range is significantly lower.

19           In fact, what his guideline range should have been, based on

20   the charges here, is really closer to 14 to 16 years, and that's

21   assuming credit for time served and all of that.  So, you know, I

22   just don't think that that's necessarily a very significant

23   argument in terms of saying, hey, he's looking at less time and

24   we're asking for more time, and so, therefore, you should give

25   him 96 months.

1    The other thing I would note is that in Dr. Barrett's

2    report, she actually recommends something even more severe, I

3    think, than sexual deviancy evaluation.  She's saying a guy like

4    the defendant, that psychiatric hospitalization is often

5    recommended.  That's obviously not what we're asking for.  We're

6    asking for him to be evaluated, and if there is a treatment plan

7    in place for him so that he can turn his life around and move

8    beyond the abuse that he suffered as a child and all of the

9    horrible things that come with that, that's what we're asking the

10   court to take into consideration.

11           THE COURT:  Thank you, Ms. Woo.  Counsel, the total

12   offense level as the court finds it here is 15, criminal history

13   category three.  It calls for an advisory imprisonment range of

14   24 to 30 months, and that is for the plea to Count 2,

15   transportation for the purpose of prostitution through coercion

16   and enticement.

17       The court is quite aware of what happened here.  It's a

18   compromise between the government and the defense.  Mr. Tramble

19   did not want to face the 15-year mandatory minimum.  Smart.  What

20   he should have done is taken the deal in King County, but that's

21   gone.  Now he finds himself here.  He realizes I could be in

22   really, really serious trouble.  The compromise is eight to 12

23   years, and we'll let the court determine what the appropriate

24   sentence is within that particular range.

25       The court in this case, as indicated, is asked to put

1    certain conditions on supervised release, and after looking

2    carefully at all of the materials submitted to this court,

3    including the expert's report, I am troubled by several things,

4    troubled by the fact that he has a horrific criminal history,

5    troubled by the fact that he definitely preys on young women.

6    He's had repeated sexual misconduct incidents going back to age

7    12.

8         No question in this particular case, which is the one right

9    at bar, he took advantage of a vulnerable young individual using

10   threats and violence as a way to intimidate that young woman.

11   For what?  To fund his own life-style.

12        At the same time, the court is quite aware that he's had not

13   the easiest of upbringings.  But he's also a grown man.  He makes

14   his decisions now as to how he wants to live his life and the

15   consequences of living that life.  If you like the street life,

16   you get the consequences of it when it catches up with you.

17        In terms of this case, the court will impose the following

18   sentence.  He will be placed on three years of supervised release

19   once he is done with his custodial time.  Restitution will be set

20   at $10,000, as agreed upon by the parties.  Because of that large

21   amount of restitution, the court will waive the fine.  The only

22   other monetary penalty will be the mandatory special assessment

23   of $100.

24        U.S. Probation recommends eight special conditions of

25   supervised release.  The court will impose each of those as set

1    out in the presentence report.  The court will also incorporate

2    some of the requested conditions by the government, but let me

3    first of all just briefly summarize the ones that are included

4    with the presentence report of probation.

5        Once he goes on supervised release, he is prohibited from

6    possessing any firearms or destructive devices defined by

7    statute.  He will cooperate in the collection of DNA.  He will

8    submit to one drug and alcohol test within 15 days of placement

9    on supervised release, and at least two periodic tests thereafter

10   never to exceed eight valid tests per month.

11       He will participate, as instructed by probation, in any

12   program approved by them for treatment of addiction, drug

13   dependency or substance abuse.  He is to completely abstain, that

14   is, not use any intoxicants, any alcohol during the entire period

15   of supervision.

16       He will submit to reasonable searches conducted at a

17   reasonable time in a reasonable manner based upon reasonable

18   suspicion.

19       He will participate, if so directed, in a mental health

20   program approved by U.S. Probation.

21       He will provide probation with access to any and all

22   requested financial information, including any authorization

23   necessary to conduct credit checks and obtain copies of any

24   income tax returns filed.

25       Additionally, the court will impose these conditions.  And I

1    understand the defense argument in this case and arguing why some

2    of these may not be necessary, but in looking at his background,

3    especially at how young he was when he began sexually acting out,

4    and looking at the expert's report in this case, there is some

5    real concern.  So the court will order that he participate in a

6    sexual deviancy evaluation conducted by an approved sexual

7    deviancy treatment provider, as directed and approved by U.S.

8    Probation.  If that evaluation says that he is deemed to be in

9    need of sexual deviancy treatment, then he shall actively

10   participate and make reasonable progress in a certified sexual

11   deviancy treatment program as designated and overseen by U.S.

12   Probation.

13       He is to follow all rules, including other life-style

14   restrictions by any treatment provider, including mental health

15   and/or sexual deviancy therapist, continue with those rules and

16   restrictions as they pertain to avoiding risk situations

17   throughout the course of his supervision.

18       He's to have no direct or indirect contact with the

19   individual known as female victim one or juvenile female one and

20   other witnesses in this case by any means.  That includes in

21   person, by mail, by electronic means, texting, phone, via third

22   parties without the prior approval of U.S. Probation.  If any

23   contact occurs, even inadvertently, he must immediately leave the

24   area of contact, report that contact to his probation officer.

25   Those will be the other special conditions that the court will

1  add.

2      Counsel, that only leaves the amount of custodial time to do

3  in this case.  The court took everything into consideration in

4  trying to figure out what an appropriate amount of time would be

5  for this particular defendant.  I certainly am not aware of all

6  of the background of all the other individuals that are named by

7  both the government and the defense in their memorandums.  I was

8  not and did not review the presentence reports and look at the

9  specifics of their cases, because I'm looking at the specifics of

10  this case, and I'm looking at the agreement that was made and the

11  potential exposure that was avoided.  And I'm also looking at the

12  actions that brought Mr. Tramble before this court.

13      The violence towards young women is not acceptable.  It's a

14  very, very serious offense.  I am not saying she was an angel by

15  the time she met him.  Obviously, she's also a flawed individual,

16  and who knows what her upbringing was like to put her in that

17  particular position.  But the fact that he deliberately believes

18  that that is the best way of funding his life-style is of real

19  concern.

20      The court in this case will impose 120 months of custody,

21  credit for all time served on this cause number.  The court feels

22  that he should be placed in a medical facility.  I think it would

23  be to his advantage to end up in one.  If not, alternatively the

24  court will recommend FCI Phoenix.

25          MS. WELLMAN:  Your Honor, it's my understanding the

1    Bureau of Prisons will not credit him with the time that he spent

2    in King County custody on these same charges unless Your Honor

3    subtracts that time from the 120 months imposed.

4        I recently had this issue come up in cases when we'd

5    sentenced them in front of Judge Pechman long ago and we

6    believed, based on Bureau of Prisons' policy, that if it

7    reflected in the judgment that credit should be given for all

8    that time, that that would take care of it.  It didn't.  If Your

9    Honor is not comfortable subtracting the time, I would at least

10    ask that the judgment reflect that he should get that time, which

11    is, of course, consistent with Title 18.

12            THE COURT:  Ms. Wellman, if I understand correctly, he

13    was arrested by local authorities on this case November 25, 2009

14    and then released; correct?

15            MS. WELLMAN:  Correct.

16            THE COURT:  He was re-arrested on January 21, 2010 and

17    detained from that date on?

18            MS. WELLMAN:  That's correct, all related to the

19    same --

20            THE COURT:  He was then transferred into federal

21    custody on July 9, 2010.

22            MS. WELLMAN:  That's correct.

23            THE COURT:  So in terms of actually being held, he was

24    held for not quite six months.

25            MS. WELLMAN:  I would defer to your math, Your Honor.

1          THE COURT:  January 21 to July 21 would be six months;

2     correct?

3          MS. WELLMAN:  Correct.

4          THE COURT:  So he was held from January 21 to July 9th.

5     That's three weeks short of six whole months.  All right.

6          MS. WELLMAN:  Yes, Your Honor.

7          THE COURT:  Let's do it this way.  I do not mean to

8     increase his time at all, so let's go ahead and subtract six

9     months from the 120, so the judgment form, just to make it easier

10    for everyone, should read 114 months.

11         MS. WELLMAN:  Thank you, Your Honor.

12         MS. WOO:  Your Honor, I'd actually like to propose,

13    because I know that the probation office has some very specific

14    language with respect to the sexual deviancy evaluation and

15    treatment, and as I recall, it's actually much longer than the

16    language that the government has put in our sentencing

17    memorandum, because it refers to who is responsible for costs and

18    supervision and that sort of thing, if I could consult with

19    probation, prepare the judgment, so that it accurately reflects

20    the language that the probation office needs, provide it to

21    Ms. Wellman and Mr. Carroll, and then we can submit it to the

22    court later today, if we could do that.  Otherwise, I'd be happy

23    to sit and hand write the language in as well.

24         THE COURT:  Let me ask Ms. Wellman, Mr. Carroll, do

25    either of you mind looking at it later?

1        MS. WELLMAN:  Well, normally, I don't.  I'm just not

2   sure if it's beyond and more extensive than what she proposed and

3   argued and typed out in her memorandum, or if there is more meat

4   to it, I guess, for lack of a better word.

5        MS. WOO:  If I can consult with Mr. Sanders.

6        MS. WELLMAN:  I'm not sure we need it.

7        THE COURT:  I understand.  Let me do this.  Why don't

8   you show the proposed language to Mr. Sanders.  He can tell us if

9   he thinks it should be any different, and we can finalize it

10  right here.

11       MS. WOO:  That's fine.

12       MS. WELLMAN:  Thank you, Your Honor.  Your Honor, my

13  apologizes.  One last thing I forgot to mention.  He would

14  appreciate a recommendation from Your Honor for the RDAP program.

15  He knows that it's not binding on the Bureau of Prisons and he

16  knows that it's up to the Bureau of Prisons whether he gets

17  credit against his time for that, but he would, nevertheless,

18  like to participate in the program and take advantage of that

19  while in custody.

20       THE COURT:  Thank you, Ms. Wellman.  I think it

21  certainly makes sense for him.  My understanding is under the

22  current rules and regulations, they probably will not give him

23  credit for release, but we will certainly make that

24  recommendation and add it to the judgment.

25       MS. WELLMAN:  Thank you, Your Honor.

1    MS. WOO:  Your Honor, I've included in here the

2    additional supervised release conditions, the other aspects of

3    the court's order on sentencing, and have reviewed it with

4    Mr. Sanders.  I'll review it now with Ms. Wellman and

5    Mr. Carroll.

6        THE COURT:  Thank you.  And, Ms. Woo, one more thing.

7    If you can indicate on the judgment form the court makes a

8    recommendation to the Bureau of Prisons that he be allowed into

9    the RDAP program.

10        MS. WOO:  Yes, we have included that, Your Honor.

11        MS. WELLMAN:  Your Honor, just so we're all on the same

12    page, I did not take your order to mean that the sexual deviancy

13    was in lieu of the mental health -- do you want mental health no

14    matter what, and potentially the sexual deviancy?  Do you want

15    both conditions in there?

16        THE COURT:  Yes.

17        MS. WELLMAN:  Or did you want the mental health crossed

18    out?

19        THE COURT:  I want both conditions in there.

20        MS. WOO:  Your Honor, I think we're going to propose to

21    type it in full and then send it to the court, but they can

22    approve it now based on their review of the judgment.

23        THE COURT:  That's what I would like, yes.

24        MS. WELLMAN:  Your Honor, we have both reviewed the

25    judgment.  I believe it reflects the order of the court.  My

1    client would waive his appearance at the signing of the judgment

2    once a corrected version is provided.

3              THE COURT:  Thank you.  So in other words, in order to

4    clean it up, we'll have the U.S. Attorney's Office type it up,

5    send it for your review, Ms. Wellman, and then assuming it meets

6    with your approval, the court will then sign it.  No need to

7    bring Mr. Tramble back.

8              MS. WELLMAN:  Thank you, Your Honor.  I appreciate it.

9              THE COURT:  But let me indicate for the record two

10   final things.  One, the court will wait to sign the judgment form

11   once it's approved by both sides.

12        And two, paragraph 14 of the plea agreement of the parties

13   indicates that as long as the court imposes a custodial sentence

14   as jointly recommended by the parties -- the court did -- then

15   the defendant would waive his right to appeal the sentence.

16   Therefore, the terms of paragraph 14 will apply.  All right.

17   We'll be at recess.

18

19

20

21

22

23

24

25

# CERTIFICATE

I, Denae L. Hovland, Official Court Reporter, do hereby certify that the foregoing transcript is true and correct.

/S/Denae L. Hovland
_____
Denae L. Hovland